UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**ERNEST R. RASMUSSEN**,                                    Case No. 1:13-cv-01958-KI

                              Plaintiff,                   OPINION AND ORDER

        v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                              Defendant.


        Phillip W. Studenberg
        Attorney at Law, P.C.
        230 Main Street
        Klamath Falls, OR 97601

                Attorney for Plaintiff

        S. Amanda Marshall
        United States Attorney
        District of Oregon

Page 1 - OPINION AND ORDER

Ronald K. Silver
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

Leisa A. Wolf
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

KING, Judge:

      Plaintiff Ernest Rasmussen brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for a period of disability and disability insurance benefits ("DIB"). I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

      Rasmussen filed an application for DIB on February 25, 2010, alleging disability beginning August 11, 2008. The application was denied initially and upon reconsideration. After a timely request for a hearing, Rasmussen, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on April 4, 2012.

      On July 25, 2012, the ALJ issued a decision finding that Rasmussen was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the

Page 2 - OPINION AND ORDER

final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on October 9, 2013.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform past work, the ALJ proceeds to the fifth and final step to determine if in light of his age, education, and work experience the claimant can perform other work in the national economy.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir.

2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ found Rasmussen has the following severe impairments:  degenerative disc

disease of the lumbar spine; status post L4-5 and L5-S1 decompression and fusion; and

degenerative disc disease of the cervical spine with spinal stenosis.  The ALJ found that these

impairments, either singly or in combination, did not meet or medically equal the requirements of

any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  The ALJ concluded

Rasmussen has the capacity to perform sedentary work.  Specifically, he can occasionally lift

and/or carry up to 20 pounds, and frequently lift and/or carry up to 10 pounds; he can stand

and/or walk for two hours in an eight-hour day; he can sit for six hours in an eight-hour day; he

must be allowed to use a cane for prolonged walking; he can only occasionally climb, stoop,

kneel, balance, crawl or crouch; and he should avoid exposure to cold, wet and hazardous

conditions.  Given this residual functional capacity ("RFC"), Rasmussen could perform his past

relevant work as a graphic designer, system specialist, and a technical support representative.

## FACTS

Rasmussen, who has an eleventh-grade education and a GED, worked in a mill and then as a cabinet-maker. He hurt his back in 1993 and was retrained in 1996 to perform information technology and graphic artist work. With the exception of 2003 and 2004, Rasmussen worked steadily until his back pain became intolerable and he underwent surgery–decompressive laminectomies and arthrodesis L4-5 and L5-S1–on September 11, 2008. At that time, Karl C. Wenner, M.D., reported,

> Mr. Rasmussen is a 40-year-old gentleman who has suffered with significant back pain for a prolonged period of time. He was followed and found to have significant degenerative change in his lumbar spine. Conservative measures including aggressive physical therapy, analgesics, etc. were instituted. This did not help and over our course of following him he developed increasing spinal stenosis symptoms. His MR scan did show stenosis of L4-5 and L5-S1. Because of the progression of his stenosis and the failure of conservative measures, he was felt to be a candidate for surgical intervention.

Tr. 285.

Rasmussen had "good relief of his pain" following the surgery. Id.; see also Tr. 302 (reported on October 24 that his pain is "markedly improved"). Dr. Wenner opined that Rasmussen could return to "[f]ull duty without limitations" by November 3. On November 7, Rasmussen did report that, just within the last few days, he had experienced significant back pain. He received an injection and a prescription for Valium. A little more than one month later, on December 19, 2008, Rasmussen once again reported being "very pleased with the results of his fusion, really does not have a lot of complaints." Tr. 299. Sometime in December, two weeks after he returned to work, he was laid off; he explained to one examining doctor that he was laid off because he was "unable to sit at his desk for the requisite amount of time necessary

to complete his task[.]"  Tr. 435; see also Tr. 34 (testified he was having trouble "[s]itting and getting things done on time").  His company had laid off 20 other employees earlier in the year when the economy collapsed.

Rasmussen obtained unemployment benefits for two years and looked for work during that time.  Prospective employers told him that because he had not been well enough to perform work as a computer graphic artist, he would not be suitable for any available position.

Rasmussen established care with Klamath Open Door Family Practice in November 2009.  Terry Jones, P.A., noted Rasmussen had not taken any pain medications for nine months; he was taking ibuprofen which helped some.  Rasmussen was thinking about applying for disability, but was not sure he qualified.  He was able to walk and climb stairs, but he had a used a cane for the past five years.  Rasmussen told Jones he had been a graphic artist for Herald News but had been laid off; he felt he could do his job if he were employed.  Jones discussed with Rasmussen "how he may have pain and walk with a cane but his rom [range of motion] and functionality were still very high, pt agreed.  This does not qualify for disability at this time, pt agreed."  Tr. 376-77.  Jones recommended heat, stretching, core exercises, Motrin and Flexeril as needed.

In March 2010, Rasmussen returned to Jones.  At that time, he was still on unemployment and had taken no pain medication other than ibuprofen, which was not sufficiently relieving his pain.  He reported being able to walk and climb stairs so long as he used his cane.  He thought he could work.  Jones assessed "significant and diffuse bilateral lumbar and cervical tenderness extending down into the paraspinal" and "walks with antalgic gait."  Tr. 325.  Jones provided

him with Vicodin.  At his one-month follow up appointment, Rasmussen reported "doing OK" but asked for an increased dose that he could take less frequently.

Charles Bury, M.D., examined Rasmussen on April 26, 2010.  Rasmussen said he could stand for 20 minutes, sit for 15 minutes and walk for 30 minutes.  Dr. Bury noted, however, that Rasmussen "appeared to be comfortable sitting longer than 30 minutes[.]"  Tr. 333.  Rasmussen walked with an uneven gait, but could lift and carry 40 pounds.  On physical examination, Dr. Bury thought Rasmussen "appears in good health."  Tr. 334.

Rasmussen returned to Jones seeking a medical excuse to avoid strenuous labor for the eight hours of community service he had been ordered to do for boating while intoxicated.  He had participated in an all-day fishing derby and had been caught drinking beer.  At that time, he complained of increasing back pain.

In September, Rasmussen obtained a refill of his Vicodin.  He reported the extra daily dose was helping and he had "no significant lapses in pain control."  Tr. 390.  At his November appointment, Rasmussen noted low back pain with radiation down the legs when he sat too long; he needed to move regularly and was constantly repositioning his body.  Vicodin dulled the pain but did not relieve it.  An x-ray showed no interval change.  In mid-November, Jones increased Rasmussen's Vicodin.

In June 2011, Rasmussen returned to Jones complaining of increased back pain over the past six months; the increase in Vicodin had not helped him significantly.  Examination showed reduced range of motion at his waist and significant axial tenderness.  Jones increased Rasmussen's Baclofen, but Rasmussen did not want to increase his opiates.  Rasmussen reported he was applying for disability.

Jones examined Rasumussen in January 2012, who shared concerns about forgetfulness and his father's and grandfather's diagnosis of multiple sclerosis. He also reported his pain medications were doing well and he had no side effects.

On March 28, 2012, Jones saw Rasmussen and completed a form describing his functional limitations. He believed Rasmussen could never lift or carry more than 21 pounds, but could frequently lift and carry up to ten pounds. He opined Rasmussen could sit, stand, and walk for one hour without interruption, but could only sit for a total of four hours, walk for a total of four hours, and stand for a total of 2 hours. He reported Rasmussen's cane was medically necessary. Rasmussen had no problems with his hands or right foot, but could only occasionally operate left foot controls. Jones thought Rasmussen's symptoms were first present as of November 23, 2009. In his examination notes, Jones reported Rasmussen "continues to have significant right buttock and lumbar pain[;] he is unable to work [due] to the pain[;] he cannot sit for more than a few moments without significant pain[;] unable to walk without a cane." Tr. 429. Rasmussen's straight leg raise was positive on the right. Jones observed significant right lumbar pain with even minimal palpation extending into Rasmuusen's buttock area; Rasmussen also walked with an obvious antalgic gait using a cane.

After Rasmussen's hearing, the ALJ referred him to Jon McKellar, M.D. for a comprehensive musculoskeletal examination. On May 8, 2012, Dr. McKellar spent 45 minutes with Rasmussen, reviewed his x-rays and MRIs, and reviewed Jones' chart notes. Dr. McKellar observed:

> General appearance is of a thin Caucasian male who gave the impression of being depressed. He moves with obvious pain in his lower back and left leg. He walks with a very antalgic gait, using a cane in his right hand while favoring his left leg.

He is right-handed. I could only test his lifting ability in one hand as it was clearly
unsafe for him to stand and try to lift with both hands. He can barely lift 5 pounds
safely with his left hand.

The patient was very cooperative despite obvious discomfort.

I observed him leaving the building and walking to his car and his activity level was
consistent with his previous performance.

Tr. 437. Furthermore, Dr. McKellar observed Rasmussen could not stand up from a chair

without assistance. In his opinion, Rasmussen could stand for 15 minutes at a time for a total of

one hour, could walk for 15 minutes at a time for a total of one hour a day, could sit for 30

minutes for fewer than four hours a day, and could lift and carry no more than 5 pounds.

## DISCUSSION

Rasmussen's Opening Brief appears to take issue with the ALJ's decision on the

following issues:  (1) his credibility; (2) the lay witness testimony; and (3) the medical opinion

evidence.

I.    Credibility

Rasmussen testified his biggest problem is that he has trouble focusing due to his pain,

that he is unable to sit for any length of time, and that he has to constantly change his position.

Additionally, "The only time I can really lay down is when I go to bed." Tr. 36. His pain

medications–Vicodin four times a day, ibuprofen, and a mild muscle relaxer–dull the sharpness

of the pain. He does not have side effects from these medications. His normal day entails

waking up at 6:00 am, drinking coffee, walking around his triple-wide modular, and then getting

his seven-year-old son up at 7:00 a.m. Rasmussen makes his son breakfast, then drives him to

school. He spends the rest of the day watching television and perhaps putting some laundry in

Page 10 - OPINION AND ORDER

the washing machine.  He has a Facebook page and chats with his family on it.  He helps his

girlfriend make dinner.  He thinks he can stand for five minutes and sit for 20 minutes.  He

admitted to receiving a ticket for boating under the influence of alcohol, explaining:

> And we were on the water for about four hours – before the sun came up, about four hours.  We had a 12-pack of beer with us.  And I was in a canoe with an electric trolling motor.  And we were fishing for the biggest trout to win the contest.  And an officer saw me drinking in the boat and took me up to the shore.  He gave me the sobriety test and I failed badly.  Of course, I was sitting down in a canoe.  And, you know, I'd have to get out every so often to go to the bank.  It was a rough morning of fishing, as it was.

Tr. 40.  He has not been fishing since.

The ALJ found Rasmussen to be "a sincere witness."  Tr. 18.  She noted, however,

Rasmussen's daily activities–vacuuming occasionally, driving short distances, going to the store,

doing laundry, fishing for four hours–do not support his allegations of constant, severe pain.

Additionally, although not having insurance is a justification for not seeking medical treatment,

he was taking only ibuprofen twice a day during those times he did not have insurance and did

not seek out emergency room or indigent care, suggesting no breakthrough pain.  Rasmussen

looked for work after he was laid off, and there are two references in Rasmussen's medical

records reflecting that he felt able to work.

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective

medical evidence of one or more impairments which could reasonably be expected to produce

some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The

claimant is not required to show that the impairment could reasonably be expected to cause the

severity of the symptom, but only to show that it could reasonably have caused some degree of

Page 11 - OPINION AND ORDER

the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence.  Id.  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

I am not convinced Rasmussen's daily activities are sufficiently arduous to undermine the sincerity of his pain complaints.  Further, the one fishing trip he took was "rough" and required that he go to the bank periodically.  Nevertheless, the other reasons the ALJ gave were clear and convincing for finding Rasmussen not entirely credible *at least up until and just past March 2010*.  The ALJ carefully explained that an inability to pay for treatment is an understandable justification for lack of treatment, but questioned how Rasmussen could control his disabling pain on ibuprofen alone without ever visiting the ER or seeking indigent care.  Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (evidence of conservative treatment, consisting of the use of over-the-counter pain medications, is sufficient to discount a claimant's testimony on the severity of an impairment).  In addition, Rasmussen's testimony to the ALJ that he looked for work and his repeated statements to Jones that he felt capable of work, at least as of March 2010, suggests Rasmussen's pain was not as debilitating as he alleges.  Bayliss v. Barnhart, 427 F.3d 1211, 1216

(9th Cir. 2005) (long-term limitations did not prevent claimant from completing high school, obtaining a college degree, finishing a training program, and participating in military training).

In sum, particularly with respect to the time ending somewhat later than March 2010, the ALJ gave clear and convincing reasons supported by substantial evidence in the record to find Rasmussen's testimony less than credible.

Beyond that time, however, the ALJ's reasoning is contradicted by the medical evidence. For example, although in April and September 2010, Rasmussen reported doing well on his pain medication with "no significant lapses in pain control," by November Rasmussen complained of radiating pain down his legs with sitting.  In June 2011, Rasmussen reported the increased Vicodin was not helping, but he did not want to increase his opiates.  His examination showed reduced range of motion.  Finally, Dr. McKellar's examination of Rasmussen in May 2012 revealed Rasmussen could barely lift 5 pounds safely with his left hand, that he could not lift with both hands while standing, and that he favored his left leg and walked with a "very antalgic gait[.]"  Tr. 437.  As I explain later in this decision, as a result of this uncontradicted examination, I find the ALJ's decision not fully supported by substantial evidence.

II.    Lay Testimony

The ALJ rejected the lay witness reports of Rasmussen's aunt, ex-mother-in-law, daughter, and girlfriend, finding them to be inconsistent with the medical evidence of record and to mirror Rasmussen's complaints, which the ALJ rejected as not fully credible.  In addition, Rasmussen's aunt, ex-mother-in-law, and daughter do not have regular contact with Rasmussen.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness.

Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).  A medical diagnosis,

however, is beyond the competence of lay witnesses.  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th

Cir. 1996).  A legitimate reason to discount lay testimony is that it conflicts with medical

evidence.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The fact that Rasmussen's daughter, ex-mother-in-law, and aunt failed to explain how

often they see Rasmussen and what it is they do with him–i.e. "insufficient contact" with

Rasmussen– is a germane reason to reject their statements.  Dodrill v. Shalala, 12 F.3d 915, 918

(9th Cir. 1993) (statements may be dismissed if witnesses do not "explain sufficiently when and

to what extent they had the opportunity to observe" claimant).  With respect to Rasmussen's

girlfriend, Heidi Donovan, her testimony was as follows:

> Q:  The surgery that he had was in 2008.  Do you – can you just describe for the
> judge what changes you've seen since 2008 to now?
>
> A:  He can do a lot less.  And he's always sore.
>
> Q:  Okay.  What does he do around the house to help you?
>
> A:  On good days, sometimes he can – he vacuums and does little things.  He tries
> to do things.
>
> Q:  Okay.  How many bad days does he have in a week, would you say?
>
> A:  Four.
>
> Q:  And how does – how do they manifest themselves?  What's a bad day like for
> him?
>
> A:  Well, when he gets really sore, he does a lot of pacing and – up and down,
> moving around.
>
> Q:  Okay.  How about lying on the floor?  Does he have to do that sometimes?
>
> A:  Yes.

Q:  How long does he do that?

A:  He'll lay on the floor 20 minutes at a time.

Tr. 55.

The ALJ rejected this testimony as inconsistent with the medical record and inconsistent with Rasmussen's testimony and statements to medical providers, which is true at least until sometime beyond March 2010.  As I set forth above, Rasmussen's surgeon cleared him for work, Rasmussen looked for work, and he told Jones on two occasions that he was capable of performing work.  Inconsistency with the medical record, is a germane reason to give lay witness testimony no weight.  Lewis, 236 F.3d at 511.

These reasons are no longer germane with respect to the time beginning in late 2010, however.  Nevertheless, I find the ALJ's error to be harmless.  Donovan's testimony was vague about Rasmussen's limitations.  Even if I fully credit Donovan's testimony that Rasmussen gets sore and paces up and down four days a week, I could not say a reasonable ALJ would have reached a different disability decision.  Even Donovan's report that Rasmussen must lie on the floor for 20 minutes at a time is general as she does not indicate how many times a day he must take this position.  In short, I can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Stout, 454 F.3d at 1056.

///

///

Page 15 - OPINION AND ORDER

III.    Medical Evidence

The ALJ gave little weight to the opinions of Dr. Bury, the physician's assistant, Jones, and Dr. McKellar.[1]

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.

A.    Dr. Bury

---

[1]The Commissioner did not respond to the arguments plaintiff made about the ALJ's improper treatment of the medical evidence.  Although not detailed, plaintiff specifically complained about the ALJ's analysis of the examining providers' opinions.  See Pl.'s Br. 3 ("The ALJ improperly rejected the all [sic] of the opinions and ultimate conclusions of Claimant's treating and examining physicians concerning the severity of Claimant's impairments, without stating clear and convincing reasons nor specific and legitimate reasons supported by substantial evidence in the record for doing so."); id. at 7 ("It is our contention that the ALJ erred in his denial of Mr. Rasmussen's Title II benefits by giving minimal or no weight to treating and examining medical professionals[.]").

The ALJ gave little weight to Dr. Bury's opinion, made in April 2010, because he is not an orthopedist and because the walking, standing, and sitting limits are not supported by Dr. Bury's examination of Rasmussen. The ALJ believed Dr. Bury had based his opinion on Rasmussen's subjective report.

The ALJ gave a sufficient reason supported by substantial evidence to give Dr. Bury's opinion little weight. Frankly, Dr. Bury's opinion about Rasmussen's functional limitations is unclear. He suggests Rasmussen can only sit for 15 minutes–relying solely on Rasmussen's testimony– but then notes Rasmussen was comfortable sitting longer than 30 minutes. He gives no indication of what total  length of time in a day Rasmussen could sit, stand or walk. While Dr. Bury obviously examined Rasmussen, as evidenced by a range of motion evaluation chart, he did not clearly translate his findings into functional limitations other than those relayed by Rasmussen. A physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Just one month earlier, in March 2010, Rasmussen had told Jones that he thought he could work. The ALJ did not err in giving little weight to Dr. Bury's opinion.

B.      Jones

The ALJ gave little weight to Jones' opinion limiting Rasmussen to less than sedentary work. The ALJ first noted Jones is not an acceptable medical source. He then went on to state, "As such, I need not weigh his opinion against the acceptable sources in the record, but can consider his opinion to show the severity of the claimant's impairment. Further, I find this inconsistent with the medical evidence of record."

Sources like Jones are considered among the "other sources" listed in the Social Security regulations.  See 20 C.F.R. § 404.1513(d)(1), 416.913(d)(1).  The ALJ may reject the opinions of such sources by giving reasons that are "germane" to that source.  Dodrill, 12 F.3d at 919. Nevertheless, although Jones is not considered an acceptable medical source, a number of factors may be relevant in evaluating such opinions.  20 C.F.R. §§ 404.1513(d), 416.913(d) (other sources may be considered when evaluating severity of impairments).  The ALJ should consider: (1) how long the source has known the claimant and how frequently the source has seen the claimant; (2) whether the opinion is consistent with other evidence; (3) the degree to which the source presents relevant evidence supporting an opinion; (4) how well the source explains the opinion; and (5) whether the source has a specialty or area of expertise related to the claimant's impairments.  SSR 06-03p.

Here, the only germane reason the ALJ gave was that Jones' opinion was inconsistent with the medical record.  It is true Jones' opinion that Rasmussen's limitations began as early as November 2009 is not consistent with the medical record, or even Jones' own treatment notes. Indeed, back in November 2009, Rasmussen specifically inquired of Jones about disability, and both agreed that Rasmussen did not qualify.  Tr. 377.  Nevertheless, by March 2012, when Jones completed the form about Rasmussen's functional limitations, Jones's chart notes reflect increased back pain with pain radiating down Rasmussen's legs and a failure of Vicodin to relieve the pain.  Jones himself noted a positive straight leg test and that Rasmussen walked with an antalgic gait.  Only a few months later, Dr. McKellar examined Rasmussen and identified almost the same functional limitations as Jones had found.  As a result, Jones' March 2012 opinion was consistent with all the medical evidence at the time.  The ALJ's reason for giving

little weight to Jones' opinion–a treating source–was not germane.  As a result, I credit Jones'

opinion as true.

       C.     <u>Dr. McKellar</u>

Finally, the ALJ gave little weight to Dr. McKellar's opinion, even though it was the ALJ

who specifically requested Rasmussen obtain a further examination.  The ALJ found:

> Dr. McKellar appeared to adopt the claimant's subjective complaints without citing
> to objective medical evidence to support such extreme limitations.  I find this opinion
> inconsistent with the objective medical evidence that the claimant had no significant
> findings of strength, reflex, motor or sensory pathology after his surgery and
> inconsistent with the claimant's own statements to his doctor.

Tr. 19.

As an initial matter, Dr. McKellar's opinion is supported by his two-page Range of Joint

Motion Evaluation Chart, as well as his observations of Rasmussen in the office.  Further, while

Dr. McKellar's opinion may be inconsistent with medical evidence and statements made by

Rasmussen two to four years earlier, it is the most recent examination of Rasmussen and as a

result, it is the most probative.  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1165 (9th Cir. 2001) ("A

treating physician's most recent medical reports are highly probative."); <u>Young v. Heckler</u>, 803

F.2d 963, 968 (9th Cir. 1986) ("Where a claimant's condition is progressively deteriorating, the

most recent medical report is the most probative.").   The ALJ failed to give Dr. McKellar's

opinion the proper weight.  As a result, I credit his opinion as true.

IV.    <u>Remedy</u>

The court has the discretion to remand the case for additional evidence and findings or to

award benefits.  <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  The court

should credit evidence and immediately award benefits if the ALJ failed to provide legally

sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.

Crediting Dr. McKellar's opinion as true, Rasmussen was unable to sit, stand and walk for a full eight-hour day, and unable to lift more than five pounds, as of May 12, 2012.  However, the date of Dr. McKellar's opinion was after Rasmussen's date last insured of March 31, 2012 and he gives no opinion about the onset date of disability.  While Jones gave his opinion on March 28, 2012, which is prior to Rasmussen's date last insured, the limitations he gave may permit Rasmussen to undertake sedentary work.  Specifically, crediting Jones opinion as true, as of March 28, 2012, Rasmussen could sit for only a total of four hours a day, which is two hours less than is typically required for sedentary work, but could frequently lift and carry up to ten pounds.  See SSR 83-10, 1983 WL 31251, at *5.  However, "[i]f an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded.  The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work."  SSR 96-9P, 119 WL 374185, at *6.

As a result, outstanding issues remain that must be resolved before a determination of disability can be made, including the date of Rasmussen's disability onset date and whether there were other jobs in the national economy that Rasmussen could perform prior to his date last insured.

///

///

///

Page 20 - OPINION AND ORDER

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) for further development of the record

as explained above.  Judgment will be entered.

IT IS SO ORDERED.

DATED this ___30th___ day of September, 2014.


                                    /s/ Garr M. King_____
                                    Garr M. King
                                    United States District Judge